SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**JESSICA R. KEEFER, MSB #1412180261**
Assistant United States Attorney
Jessica.Keefer@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:25-cr-00313-AB-1** |
| **v.** | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **EDER FLETES CALIX,** | |
| **Defendant.** | |

**Introduction**

The defendant, Eder Fletes Calix, possessed over 700 grams of fentanyl with the intent to distribute it. As the result of a law enforcement investigation starting in March 2025, the defendant was developed as a person distributing fentanyl. The investigation led to multiple search warrants executed on July 2, 2025, which ultimately led to the discovery of over 700 gross grams of fentanyl powder. The defendant admitted that he and co-defendant Nelson Martinez Vilchez intended to

sell the fentanyl. The defendant should receive a 41-month sentence of imprisonment, followed by five (5) years of supervised release.

**Factual Background**

**A. The Offense Conduct**

The investigation started in March 2025, when an Oregon State Trooper observed an interaction with a female getting out of her vehicle and then into another vehicle, where the defendant, Eder Fletes Calix, was driving and the co-defendant Vilchez was the front seat passenger. The defendant then drove away. The trooper attempted to run the license plate of the vehicle, which returned as not having a valid registration, so the trooper followed and initiated a traffic stop. The defendant was unable to provide a driver's license or any documents for the vehicle but provided a Mexican identification card bearing the name "Alex Jose Dominguez Perez." Co-defendant Vilchez also provided a Mexican identification card bearing the name "Oscar Josue Sanchez Martinez." Two rear passengers were identified. During this traffic stop, the trooper observed a large roll of cash within a cupholder of the center console of the vehicle, which co-defendant Vilchez later secured and placed in his pocket. When the trooper was speaking with one of the rear passengers at his vehicle, the defendant's vehicle doors opened and both the defendant and the co-defendant ran away from the vehicle, which the defendant left running. When the trooper stayed with the defendant's vehicle, he saw drug paraphernalia in the center console, a small amount of marijuana in the driver's door pocket and suspected drug packaging materials in the passenger door pocket. A search warrant was executed on the vehicle the same day, and approximately 107.4 gross grams of marijuana, two digital scales, and a package on the rear passenger floorboard which contained approximately 413.3 gross grams of compressed fentanyl powder were seized. The DEA then took over further investigation.

During the DEA investigation, agents observed a drug transaction on May 13, 2025, where the buyer stopped at a vehicle occupied by the defendant and co-defendant. The buyer was stopped after the transaction and admitted to buying a half ounce of fentanyl for $500 and further indicated that she has completed transactions with the defendant and co-defendant numerous times previously. Agents seized a package from the buyer which contained 53.9 gross grams of fentanyl powder.

A little over a month later, on June 24, 2025, agents were surveilling the defendant's vehicle and observed the vehicle making multiple stops throughout the day, eventually stopping at an address on 67th Avenue in Portland, Oregon. The agents later observed another apparent drug transaction where a buyer stopped, walked to the defendant's vehicle, had a brief transaction, returned to her vehicle and left. Agents conducted a traffic stop of the buyer, who admitted to buying drugs from the defendant and co-defendant. Agents seized a package containing approximately 70.2 gross grams of compressed fentanyl powder from the buyer's purse that she wore during the transaction.

Through investigation, agents identified the defendants' address in Beaverton, Oregon. On July 2, 2025, agents were surveilling the residence. Agents saw the defendant leave the residence and get into a vehicle where the co-defendant was in the passenger seat. Agents conducted a traffic stop and arrested both defendants. On the defendant agents located a fraudulent Mexican identification card bearing the defendant's photograph and the name "Angel Fonseca Munos." Agents additionally seized a key to the residence and an iPhone from the defendant. On co-defendant Vilchez's person, agents seized a fraudulent Mexican identification card bearing the name "Jose Alfredo Martinez Escoto" and a Samsung cellphone. Both were later transported to the DEA Portland office.

The same day, July 2, 2025, multiple search warrants were executed. One search warrant was executed on the vehicle the defendants were stopped in. Agents seized a package containing 353.2 ± 0.2 net grams of fentanyl powder, a digital scale with residue, and multiple boxes of plastic Ziploc bags.




*Images from the search warrant of the vehicle*

That same day, agents executed a search warrant at the defendants' residence in Beaverton, Oregon. Agents then identified a small studio apartment style living space on the side of the residence and entered using the key seized from the defendant's person. Agents were informed by the owner that defendant Calix had been renting the room for approximately one year, and co-defendant Vilchez had arrived within the past few months.

Agents located $22,000 in United States currency within a black backpack, a title for the vehicle defendants were stopped in, and a passport. The money was separated into bands of thousands.

/ / /

/ / /

/ / /



*Image of U.S. currency found*

Within the kitchenette of the same small residence, investigators located a drawer with numerous empty plastic bags with white powder on them. Near the bottom of the drawer, investigators located small flat pressed bricks of suspected fentanyl powder. The package contained two brick shaped objects later determined to contain 243.9 ± 0.2 net grams of fentanyl powder.

In total, investigators seized approximately 767.9 gross grams of fentanyl powder from the physical locations and the vehicle. The amount of fentanyl found and the cash that was found in the house indicate that the defendant possessed the fentanyl (N-phenyl-N- [ 1- ( 2-phenylethyl ) - 4-piperidinyl ] propanamide) with the intention to distribute it to a third party or third parties.

During a post-Miranda interview, defendant Calix stated that the vehicle they were stopped in that day was owned by Vilchez and admitted that he knew the substance was fentanyl and that he and Vilchez were selling the substance.

/ / /

/ / /

**B. The Charges**

Defendant was charged in a single count indictment with possession with the intent to distribute 400 grams or more of a mixture containing N-phenyl-N-[ 1-( 2-phenylethyl ) -4 piperidinyl ] propenamide (fentanyl), a Schedule II controlled substance.

**C. The Plea Agreement & Guideline Computations**

Defendant agreed to plead guilty to the sole count of Possession with Intent to Distribute Fentanyl. The government also will, subject to the limitations set forth in the agreement, recommend that defendant receive a three-level reduction for acceptance of responsibility. Because the parties believe the defendant meets the criteria of 18 U.S.C. § 3553(f) and USSG § 5C1.2 for "safety valve" relief from a mandatory minimum sentence, the parties will recommend a two-level reduction in offense level pursuant to USSG § 2D1.1(b)(18).

Additionally, the parties also believe that the defendant does not have any criminal history points and otherwise meets all the criteria for the "Adjustment for Certain Zero-Point Offenders," and thus will recommend a two-level downward adjustment pursuant to USSG § 4C1.1, if adopted.

The government and U.S. Probation Office believe defendant's initial adjusted Offense Level for sentencing purposes is 23.

Finally, if the defendant resolved his case and demonstrated an acceptance of responsibility as described above, the government recommends, as a reasonable sentence under the factors listed in 18 U.S.C. § 3553(a), a 1-level downward variance and the low end of the resulting guidelines, followed by 5 years of supervised release and a $100 special assessment.

The government's additional one-level reduction under 18 U.S.C. § 3553(a) would result in an adjusted Offense Level of 22, and with Criminal History Category of I, the defendant's suggested sentencing range is 41 to 51 months' imprisonment.

The parties agree with the following PSR computations:

| **Enhancement** | **Government's Position** |
|---|---|
| Base—<br>USSG § 2D1.1 | 30 (not contested) |
| Acceptance of Responsibility—<br>USSG § 3E1.1 | -3 |
| Safety Valve—<br>USSG § 5C1.2 | -2 |
| Zero-Point Offender—<br>USSG § 4C1.1 | -2 |
| **Government's Total Offense Level** | **22** (Reduced 1 level as a variance under 18 U.S.C. § 3553(a)) |
| **Resulting Guideline Range** | **41-51 months** |

**Argument**

**A. Government's Recommended Sentence**

The Court should impose a sentence of 41 months' imprisonment followed by five years of supervised release. A lesser sentence would not reflect the seriousness of the defendant's decision to sell fentanyl – a very dangerous drug. The defendant's criminal actions warrant a custodial sentence that, nevertheless, accounts for the defendant's lack of criminal history.

The defendant was involved in distributing an incredibly addictive, destructive, and deadly drug that has been devastating communities in Oregon. Given the nature of the case, defendant's advisory sentencing guidelines, the societal harm caused by his drug dealing, the defendant's lack of criminal convictions, and his age, the government believes the requested sentence is both reasonable and justified. The sentencing reductions the defendant receives for his role, "safety valve," "Zero-Point Offender" status, and guilty plea are sufficient. Given the amount of fentanyl the defendant was responsible for distributing, he should not receive any further reductions to his advisory sentencing guideline range.

Accordingly, after evaluating the competing sentencing factors outlined in 18 U.S.C. § 3553(a) which include the nature and circumstances of the offense; the defendant's characteristics; the need for the sentence imposed to reflect the seriousness of the offense; the need for the sentence to promote respect for the law; the need for the sentence to afford adequate deterrence to criminal conduct; the need for the sentence to provide just punishment for the offense; the need to protect the public from further crimes of the defendant; and, the need to provide the defendant with needed training or other corrective treatment, we believe a sentence of 41 months' imprisonment is reasonable. The government asks the Court to impose it, to be followed by a five-year term of supervised release.

**Conclusion**

Based on the foregoing, the government recommends that this Court impose a sentence of 41 months, followed by a five (5) year term of supervised release, subject to the standard conditions.

Dated: October 14, 2026

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

*/s/ Jessica R. Keefer*
JESSICA R. KEEFER, MSB #1412180261
Assistant United States Attorney